

**ENTERED**
**07/22/2009**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MARVIN E. MOYE; dba JMW AUTO | § | CASE NO: 07-37770 |
| SALES, LTD; dba JMW AUTO SALES, LLC; | § | |
| dba JMW GROUP INVESTMENTS, LTD.; | § | |
| dba JMW AUTO TRANSPORT, LLC; dba | § | |
| JMW AUTO SALES; dba JMW RETAIL | § | |
| AUTO SALES, LTD., JOAN M. MOYE | § | |
| | § | |
| JMW AUTO SALES | § | CASE NO: 07-37364 |
| | § | Jointly Administered Order |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

## ORDER SUSTAINING OBJECTIONS TO PROOF OF CLAIM
## (DOC ## 182, 187. 191)

### I.  BACKGROUND

To say that the administration of these jointly administered bankruptcy cases has been chaotic is an understatement. Case number 07-37364 was commenced by an involuntary petition; the Court entered an order for relief on that petition. Marvin Moye commenced case number 07-37770 by voluntary petition shortly thereafter. The chapter 7 Trustee investigated the Debtors' books and records but was unable to determine whether d/b/a's were separate legal entities or simply d/b/a's. Debtors' transactions were "handshake deals" that the Trustee contends, and has demonstrated in various hearings, constituted an elaborate Ponzi scheme involving the sale of used cars. Debtors bought used car inventory, sold the inventory to Texas consumers on credit, and then through inadequately documented and perfected agreements purported to sell the stream of payments on the consumer notes to "Pool Investors". The Pool Investors allege that they have a security interest in the cars or in the notes, although the allegations are not altogether clear. Virtually none of these transactions was competently documented or perfected in accordance with applicable law. Some of the Pool Investors were sophisticated used car businessmen and businesswomen and some were friends, acquaintences, and current or former business associates of Debtors. Others were unsophisticated investors. There was only one institutional lender (AFC) that properly perfected a blanket used car inventory lien.

The purchasers of the used cars were caught in the middle. In many cases they were unable to get title to the cars that they purchased even though they had paid the notes.

The chaotic underlying facts and the need for operation of the business (including protection of innocent consumers and preservation of as much value for the estate as possible) led to litigation of some issues in a less than optimum way, despite a Herculean effort by the Trustee. The Trustee has resolved disputes with virtually all parties except for one group of Pool

Investors. Although the settling parties are not happy with the result, in light of their incomplete, incompetent, and unperfected documentation the result is acceptable to them. This memorandum opinion deals with the Pool Investors with whom the Trustee has not been able to settle.

## II.      OBJECTION TO CLAIM # 60

A.      The Proof of Claim

The claim at issue in this opinion is proof of claim # 60 filed on May 20, 2008 by Hardy Rawls Enterprises, LLC. ("HRE"). The document asserts an unsecured, non-priority claim for $200,000 and a secured claim for $1,556,012.

   1.      Compliance with the instructions in the Official Form

Proofs of claim should be filed on Official Form # B-10, and Claim # 60 purports to be filed on that form. The Official Form requires supporting documents:

> Supporting Documents: ***Attach copies of supporting documents,*** such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach **a** summary.

The only attachment to HRE's proof of claim is the following statement:

### Summary of Voluminous Documents

> Trustee has possession of approximately **150+** titles reflecting, in principle part, claims of **$1,556,012** resulting from "floor plan" loans, on various dates, by creditor on vehicles secured by purchase money security interests and the titles to the vehicles. Additionally, there is an unsecured loan of $200,000 made by creditor to debtors.

   2.      Inadequacies in the proof of claim on its face.

As to the unsecured claim, the quoted statement is simply inadequate. In addition, this estate will likely have little, or no funds to pay unsecured creditors, and therefore there may be no need for a determination of the unsecured claim.

The more important dispute is whether HRE holds a secured claim. The reference to automobile titles as "reflecting…claims of $1,556.012 resulting from 'floor plan' loans, secured by purchase money security interests and the titles to the vehicles" simply makes no sense. Not only does it not explain what HRE's alleged security interest is,[1] it is also inadequate with

---

[1] HRE's proof of claim does not state <u>who</u> holds a floor plan security interest. The vehicle inventory did indeed secure a floor plan security interest, but that security interest was AFE's not HRE's. Arguably, the proof of

respect to the contention that the vehicle titles demonstrate a specific amount for HRE's alleged secured claim. The Texas automobile title document may evidence the fact that a party holds a security interesting the vehicle, but it does not evidence the amount of the debt. No other documentation was attached to the proof of claim to evidence the indebtedness.

B.     The Objections to the Proof of Claim

The chapter 7 Trustee filed docket # 182[2] objecting to HRE's proof of claim. The objection alleges that HRE's initial counsel had agreed that HRE had not provided and did not have any documentation establishing a secured claim or any documentation that arguably evidenced a debt of any kind. The objection further alleges that after HRE's initial counsel withdrew, successor counsel filed proof of claim # 60 as a litigation strategy to delay removal of the used cars from Debtors' former place of business. (The Trustee alleged that HRE owned the rented property and was using the proof of claim as leverage to extend its administrative rent claim for the property.)

AFE filed docket # 187 objecting to HRE's proof of claim. Like the Trustee, AFE alleges that HRE has presented no evidence of a debt, nor any evidence of a security interest. AFE supports the Trustee's allegations concerning HRE's first counsel's concession that there was no documentation supporting a secured claim. Finally, AFE echoes the Trustee's allegations that HRE took no steps to record a security interest in any public filing.

C.     HRE's Response to The Objections to Its Claim

HRE's response is docket # 197. It alleges that HRE advanced money to Debtor to purchase used cars for inventory, and that therefore HRE had a purchase money security interest. It further alleges that HRE obtained the Texas certificates of title, and that possession of these titles effected a security interest in the vehicles. Both security interests allegedly were effective without recordation with any government agency and without notation on the titles.

The response does not quantify the amount of HRE's claim, does not allege that there is any evidence that quantifies that claim, and does not refer to any recordation that perfects the security interest. It engages in a rambling discourse about how the process was supposed to operate (*i.e.* what the "handshake deal" was) and what issues the Court ought to decide (largely ignoring the issue that was postured for decision, *i.e.* the documentation and perfection of HRE's security interest.)[3]

Attached to the response are exhibits that purport to be accounting records and copies of checks, but there is no explanation of what they purport to show and there is no reconciliation showing how one might conclude that Debtor's owed HRE $1.556 million.

---

claim was intentionally misleading. The proof of claim also doesn't explain how the titles would show a blanket security interest on inventory (*i.e.* a floor plan security interest). Those security interests, as explained elsewhere in this memorandum, are perfected without reference to the vehicle title.
  [2] Docket # 191 is the Trustee's amended objection to claim. They are both discussed in this paragraph.
  [3] *See* paragraphs 8 and following in docket # 197.

### III. PROCEEDINGS—ROUGHLY CHRONOLOGICALLY

A. Commencement of the Cases

An involuntary bankruptcy petition was filed October 31, 2007 commencing the case against JMW Auto Sales and its various d/b/a's. Marvin Moye, the principal of the Debtor d/b/a's filed a voluntary petition commencing case number 07-37770 on November 6, 2007.

The Trustee spent the next six months trying to collect notes from consumers who had purchased used cars from Moye and the d/b/a's, trying to deliver titles to the consumers who paid off their notes, and trying to understand the business in general.

B. Trustee's Motion to Sell Used Car Inventory (docket # 130) and AFE's Motion for Relief From the Automatic Stay (docket # 150)

In May, 2008, the chapter 7 Trustee filed docket # 130, a motion to sell the vehicle inventory and docket # 131, an application to employ Insurance Auto Auction to employ an auctioneer. The Trustee alleged that HRE had announced that it would begin charging rent on Debtors' facilities, resulting in charges that the bankruptcy estate could not afford to pay. The motion notes HRE's claim of lien, and asserts that the claim is not valid. HRE received notice of the motion.

Later that month, AFE (the only creditor with documentation of a security interest and evidence of perfection of that security interest) filed a motion to lift stay to exercise its rights under state law with respect to the vehicles that the Trustee proposed to sell. HRE received notice of that motion.

On June 13, the chapter 7 Trustee withdrew his motion to sell.

On June 16, HRE filed an objection to the motion for relief from the stay (docket # 161). Although the motion is titled and was docketed by HRE's counsel as an objection to the motion to lift stay, it is confusing in that it refers to AFE's intention to sell vehicles. It is not at all clear whether HRE is objecting to relief from the stay or to the motion to sell. The response is further confusing because earlier in the case AFE had obtained more limited relief from the stay without objection by HRE.[4]

AFE responded to the HRE objection in docket # 163, alleging that HRE's claim to a security interest was specious, undocumented, and without foundation.

After hearing on June 23 and on July 14, the Court granted the motion to lift stay. HRE did not appeal that order. It has been a final order for about 1 year.

---

[4] Thus supporting the Trustee's contention that HRE's prior counsel had conceded that HRE had no evidence of a perfected security interest.

C. The Objection to Claim

As noted above, docket # 181, filed two days after the Court lifted the stay, is the objection to claim. Also as noted above, AFE filed an objection to the claim and HRE filed a response.

D. The Motion to Sell Repossessed Vehicles and Junk Cars (docket # 177)

On June 30, the chapter 7 Trustee filed a motion to sell repossessed cars and junk cars. The Trustee again cited the fact that HRE had notified the Trustee that he would begin to charge rent.

In docket # 186, HRE objects to the sale, alleging, among other things, that "there is a legitimate question" about whether some of the property is property of the estate.

E. Motion for Turnover of Vehicle Titles (docket # 193)

As noted, over HRE's objection, AFE had obtained relief from the automatic stay to exercise its security interest in the used car inventory. The Debtors held title to some or all of the vehicles, and AFE wanted delivery of those titles to complete the foreclosure and sale of its collateral.

HRE continued to assert that it had a security interest in the vehicles which alleged security interests were allegedly perfected by pre-bankruptcy possession of the automobile titles. HRE acknowledged that the titles had been delivered by its first counsel to the chapter 7 Trustee[5], but HRE argued that the relinquishment of the titles was subject to an agreement that the relinquishment did not affect the security interest allegedly created by possession of the titles. The chapter 7 Trustee contended that the titles were relinquished upon concession by HRE's counsel that HRE had no security interest, derived from possession of titles or otherwise. Although the Trustee did not dispute that AFE was entitled to delivery of the titles, the Trustee was unwilling to deliver the titles without Court order.

Therefore, AFE filed docket # 193, a motion asking the Court to require the Trustee to turn over title certificates to AFE.

F. The Order for Mediation

Docket # 203 is an order requiring mediation. The mediation was supposed to allow Mr. Rawls and AFE to meet, person to person, and try to resolve all differences.

As recently found by the Court, HRE and Mr. Hinds (counsel for HRE) were disingenuous in asking for mediation, in influencing the structure of the mediation, and in failing to participate in the mediation.[6]

---

[5] *See* Bankruptcy Code § 542, 543.
[6] S*ee* docket # 338.

G.      The Hearing and Order Compelling Turnover

On August 29 the Court conducted a hearing on AFE's motion to turn over titles. HRE, represented by attorney Ronald Hines, participated fully in that hearing.

At the conclusion of the hearing, the Court issued an order and memorandum of findings and conclusions, docket ## 210, 212. To rule on the motion, the Court necessarily had to determine whether HRE's contentions concerning its secured claim had any validity. The memorandum clearly rejects all legal theories on which HRE claims a secured interest.

HRE has not appealed the order. It has been a final order since August, 2008. The titles have been delivered, and the foreclosure of AFE's security interest is complete.

H.      Motion for Judgment on the Pleadings Regarding Objection to Claim

In a case management order issued October 15, 2008, (docket # 237) the Court suggested that relitigation of the HRE assertion of a security interest was probably precluded by the hearing, memorandum of law, and order for turnover of the certificates of title. The Court gave the parties time to brief that issue.

In docket # 243, the chapter 7 Trustee seeks judgment on the pleadings, asserting that because of the Court's determinations as set forth above, the invalidity of HRE's security interest is the law of this case. In docket # 244, HRE disagrees, and in a rambling pleadings re-urges the legal positions that on which it had not prevailed in the motion for turnover. In docket # 259, HRE makes essentially the same argument in a response to the chapter 7 Trustee's motion for judgment on the pleadings.

## IV.    CONCLUSION

A.      As a Matter of Law, HRE Never Had a Security Interest in Debtor's Vehicles on Inventory

The legal analysis is set out in docket # 212. The order which resulted from that legal analysis was not appealed and is a final order. It is the law of this case.

B.      Even if HRE Ever Had A Security Interest, It No Longer Has One

Bankrutpcy Code § 506 provides that a secured claim is a claim that has a security interest in property of the estate. The Trustee has sold some property in which AFE claimed a security interest, and AFE has foreclosed on the rest. Therefore, there is no longer any property of the estate on which HRE can claim a secured claim.

C.      Inadequate Documentation Has Been Attached to the Proof of Claim to Allow the Claim as an Unsecured Claim

As noted above, there is no documentation attached to the proof of claim to substantiate an unsecured claim. And allowance of an unsecured claim may be not worth the effort in any

event unless the Trustee has funds to distribute to unsecured creditors, an unlikely prospect at this time.

D.  Separate Order

Therefore, by separate order issued this date, the objection to the HRE proof of claim, Proof of Claim # 60 is sustained. The Claim is disallowed.

However, the Court notes that the disallowance of the unsecured claim is based on the belief that there will not be funds for distribution to unsecured creditors. If that belief is incorrect, that would be equitable grounds for reconsideration of the unsecured status of the claim under authority of Bankruptcy Code § 502(j).

SIGNED 07/22/2009.

_____
Wesley W. Steen
United States Bankruptcy Judge