IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 07-37770 |
| MARVIN E. MOYE; dba JMW AUTO | § | Chapter 7 |
| SALES, LTD; dba JMW AUTO SALES, | § | |
| LLC; dba JMW GROUP INVESTMENTS, | § | |
| LTD.; dba JMW AUTO TRANSPORT, | § | |
| LLC; dba JMW AUTO SALES; dba JMW | § | |
| RETAIL AUTO SALES, LTD., JOAN M. | § | |
| MOYE, | § | |
| | § | |
| JMW AUTO SALES | § | CASE NO: 07-37364 |
| | § | Jointly Administered Order |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

Automotive Finance Corporation ("AFC") and Warren Waite, Jr. ("Waite"), Shirley Strange, and Robert Strange ("Waite/Strange Parties") have filed cross motions for summary judgment on AFC's motion for relief from the automatic stay. The Court grants summary judgment, in part, in favor of AFC, and denies summary judgment to the Waite/Strange Parties. AFC has established that it has a perfected first-priority lien on any vehicles or retail installment contracts that are property of the estate. However, there is a genuine dispute of material fact as to whether the vehicles and retail installment contracts at issue in this matter are property of the estate.

### Background

This is a contested matter to determine whether AFC has a perfected first-priority security interest in 17 vehicles ("Vehicles") and approximately 36 retail installment contracts ("RICs"). AFC asserts that the Vehicles and RICs are property of the estate. The Waite/Strange Parties assert that they also have security interests in the Vehicles and RICs. The Vehicles are likely inoperable. They are the sole remaining tangible assets of this bankruptcy estate. ECF

No. 589, at 1. The Court has already entered an order providing for the auction of the Vehicles. This dispute concerns the proceeds of the sale.

### *1. AFC's Lien on JMW's Inventory*

JMW Auto Sales was a used car dealer. Much of JMW's business was conducted in an informal manner. ECF No. 348, at 1. JMW's business involved buying used car inventory, selling the inventory to consumers, and then—through inadequately documented and unperfected agreements—purporting to sell the stream of payments on the consumer notes to "pool investors." ECF No. 348, at 1; No. 08-3124, ECF No. 60, at 2.

JMW entered into agreements with the pool investors, signing a Master Purchase and Sale Agreement ("Master Agreement"), but executing no other documentation. No. 08-3124, ECF No. 60, at 2; *see* ECF No. 580-4. After signing a master agreement, JMW and a pool investor would agree on an amount to be invested, and JMW would "pool" a number of retail installment contracts whose aggregate current principal balance was equal to the amount of the agreed investment. No. 08-3124, ECF No. 60, at 2. JMW did not indorse installment contracts to the pool investors, modify vehicle titles, or execute any other documents that transferred rights in installment contracts to the pool investor. No. 08-3124, ECF No. 60, at 2. In some, but not all, cases JMW delivered vehicle titles to pool investors. No. 08-3124, ECF No. 60, at 2. The informal manner of JMW's pre-bankruptcy transactions has led to numerous lien and title disputes in this bankruptcy case.

In this matter, both AFC and the Waite/Strange Parties claim an interest in the 17 Vehicles. AFC's claimed interest is formally documented. AFC provided floor-plan financing to JMW. JMW signed an original promissory note in favor of AFC on September 9, 2002. ECF No. 578-1, at 8. AFC filed a UCC-1 financing agreement with the Texas Secretary of State on

September 17, 2002, establishing its first-priority lien on JMW's inventory, "including but not limited to inventory of motor vehicles, equipment, accounts, chattel paper, general intangibles and all additions, accessions, accessories, replacements and proceeds thereof." ECF No. 578-4, at 1; *see* ECF No. 589-5, at 1. AFC was the only institutional lender that properly perfected a blanket inventory lien. ECF No. 348, at 1.

On November 17, 2003, JMW signed a demand promissory note and security agreement in favor of AFC. ECF No. 578-1. The Moyes signed an unconditional and continuing guaranty on November 9, 2004. ECF No. 578-2. JMW also executed a power of attorney in favor of AFC. ECF No. 578-3.

## 2. *The Waite/Strange Adversaries*

On October 31, 2007, an involuntary chapter 7 petition was filed against JMW. No. 07-37364. On November 6, 2007, Marvin Moye, Joan Moye, and JMW (collectively, "Debtors") filed this voluntary chapter 7 case. Lowell Cage was appointed the chapter 7 Trustee ("Trustee"). The Moyes' case listed several businesses, including JMW, as "d/b/a" entities owned by the Moyes.

The course of the JMW bankruptcy cases has been tortuous. *See* ECF No. 368 ("To say that the administration of these . . . bankruptcy cases has been chaotic is an understatement."). This case has involved lien disputes, *see* ECF No. 121, multi-party objections to claim, *see* ECF Nos. 348 & 349, and numerous adversary proceedings. The Trustee filed sixteen adversary proceedings connected with this bankruptcy case. Fourteen of those adversary proceedings were filed against pool investors. ECF Nos. 310, at 2; 578-6, at 2. The Trustee sought to determine the legality of the pool investors' agreements with JMW. The pool investors included Waite and Robert Strange. ECF Nos. 310, at 2; 578-6, at 2.

The Trustee filed Adv. No. 08-3124 against Waite and Warren Waite, III ("Waite III"), and Adv. No. 08-3223 against Robert and Shirley Strange (collectively, "Waite/Strange Adversaries"), seeking to avoid preferential transfers. ECF Nos. 310, at 3; 578-6, at 3. Many of the issues involved in this matter were dealt with in the Waite/Strange Adversaries.

In the adversaries, the Trustee alleged that in 2007, JMW was unable to continue making payments to pool investors and solicited offers for purchase of the retail installment contracts at a discounted value. JMW sold the contracts to Mid-Atlantic Finance Co. at 83 cents on the dollar. No. 08-3124, ECF No. 60, at 3-4. Pool investors who had possession of installment contracts delivered them to JMW. JMW then remitted some of the funds to pool investors, including the Waite/Strange Parties. Less than 90 days later, an involuntary bankruptcy petition was filed against JMW. The Trustee accordingly sought to recover the payments under § 547 of the Bankruptcy Code as preferential transfers.

The Waite/Strange Parties contended that they owned the installment contracts. The funds that were transferred to the Waite/Strange Parties therefore were not property of the estate and did not constitute preferential transfers. No. 08-3124, ECF No. 60, at 4.

On November 18, 2010, the Court granted summary judgment in favor of the Trustee in the Waite/Strange Adversaries. No. 08-3124, ECF No. 60; No. 08-3223, ECF No. 50. The Trustee's summary judgment evidence established all elements of a § 547 claim. The Court specifically found that the Waite/Strange Parties did not own the retail installment contracts. First, the Master Agreements that JMW executed with the pool investors did not transfer any retail installment contracts; at most, the agreements contemplated the future transfer of contracts. Second, any transfer of the contracts would violate Texas law. Under Tex. Fin. Code § 348.501(a), all "holders" of vehicle retail installment contracts must be licensed. Prior to the

bankruptcy cases, the Waite/Strange Parties were not licensed holders of retail installment contracts. Waite alleged that he obtained a license after the filing of the bankruptcy cases, but he never, prior to the sale of the installment contracts, had legal authority to own them. The Court therefore held that any contract for the sale of the installment contracts to the Waite/Strange Parties was void under Texas law. No. 08-3124, ECF No. 60, at 8. The Court also found that the Waite/Strange parties never documented nor perfected any security interest. No. 08-3124, ECF No. 60, at 9. The Court therefore granted summary judgment in favor of the Trustee. On appeal, Waite and Waite III argued that the Court erred in holding that any purported transfer of installment contracts was void because the transferees did not, at that time, have a valid license. *Waite v. Cage*, 2011 WL 2118803, at *3 (S.D. Tex. May 27, 2011). The District Court affirmed, holding that any transfer was void because neither Waite nor Waite III had a valid license at the time of the transfer. *Id.*

The District Court also upheld the summary judgment in the Stranges' adversary proceeding. *Strange v. Cage*, 2011 WL 1337130, at *3 (S.D. Tex. Apr. 6, 2011). As in *Waite*, the District Court held that any transfer was void because the Stranges did not have licenses. Additionally, the District Court affirmed that "[t]he Master Agreement does not itself transfer any rights, but, instead, indicates that the parties intend to transfer Installment Contracts in the future. There is no evidence of the actual transfer of any particular Installment Contract." *Id.*

### 3. *Trustee's Motions to Sell Vehicles*

On May 14, 2008, the Trustee filed a motion to sell JMW's vehicle inventory free and clear of liens, claims, and encumbrances. ECF No. 130. The Trustee proposed that any liens on the vehicle inventory would attach to the auction proceeds. ECF No. 130, at 5.

On May 30, 2008, AFC filed a motion for relief from the stay as to the inventory. ECF No. 150. On June 24, 2008, the Court ruled that, as to the vehicles listed on Exhibit E, ECF No. 174, at 4-6, "if the vehicles were not property of the estate, then the automatic stay does not apply to the vehicles, but if they were property of the estate, then the stay is lifted for cause." ECF No. 174, at 1. As to the vehicles listed on Exhibit 1, ECF No. 174, at 2-3, the Court continued the hearing to June 30, 2008. ECF No. 174, at 1.

Exhibit E identified the covered vehicles by year, make, model, and the last six digits of the Vehicle Identification Number. All but one the Vehicles involved in this dispute, listed at ECF No. 578-8, were listed on Exhibit E. *See* ECF No. 578-3 (copy of Exhibit E with Vehicles highlighted). The Vehicle that was not listed was a 2000 Plymouth Voyager, VIN 2P4GP2436YR610721 ("Plymouth Voyager"). Exhibit E does, however, list a 2000 Dodge Caravan with a VIN ending in "610721."

Of the 17 Vehicles, the column labeled "Investor #1, Interest" lists "Waite" for 11 of the vehicles. ECF Nos. 578-3 & 174. The column lists "Strange" as the "Investor #1, Interest" for one of the vehicles. ECF Nos. 578-3 & 174.

Eventually all vehicles were sold except the 17 Vehicles at issue here. On March 3, 2011, the Trustee filed a Notice of Abandonment, indicating that he would abandon the 17 Vehicles. ECF No. 538. The Trustee indicated that the Vehicles were "largely inoperable" and had "little or no value for the Estate." ECF No. 538, at 2.

AFC filed another motion for relief from the automatic stay ("Motion") on April 5, 2011. ECF No. 556. Asserting that the Court had already determined that AFC had a perfected, first-priority security interest in the Debtors' inventory, including the Vehicles, AFC sought to have the stay lifted with respect to the Vehicles and approximately 36 RICs. ECF No. 556, at 5-6.

AFC sought to take possession of all the RICs in which it had a perfected first-priority security interest. ECF No. 556, at 5.

Concurrently, AFC filed a motion to compel the Texas Department of Motor Vehicles ("DMV") to issue duplicate certificates of title to the Vehicles and to release the certificates to AFC. ECF Nos. 558 & 575.

The Waite/Strange Parties, together with Kings Kar, LLC ("Kings Kar"); Waite III; and Mark Telscher d/b/a FT Development (collectively, "Respondents"), filed an opposition response to the Motion on April 22, 2011. ECF No. 569. The Respondents asserted that the Vehicles were not part of the inventory for which AFC claimed a security interest. ECF No. 569, at 1. The Respondents also asserted that AFC had not identified the RICs and did not provide a basis for its contention that the RICs were covered by its claimed security interest. ECF No. 569, at 2. The Respondents therefore asked that the Court deny the Motion.

The Court held a hearing on the motion on April 29, 2011. The Court did not decide the Motion on the merits, but determined that the Vehicles would be sold. The parties were to submit an agreed order on the procedures for the sale of the Vehicles within 7 days. The sale of the Vehicles would be conducted by the Trustee. The parties were allowed to submit dispositive motions on the merits of the Motion, arguing how the proceeds of the sale should be distributed.

On May 18, 2011, AFC filed a motion for summary judgment on the distribution of the sale proceeds. ECF No. 578. The Waite/Strange Parties filed a motion for summary judgment on May 20, 2011. ECF No. 580.

AFC's summary judgment evidence includes its Promissory Note and Security Agreement with JMW, ECF No. 578-1; an Unconditional Guaranty signed by Joan Moye and Marvin Moye, ECF No. 578-2; a Power of Attorney executed by Joan Moye on behalf of JMW,

granting AFC various powers in connection with the Promissory Note and Security Agreement, ECF No. 578-3; a UCC-1 Financing Statement filed by AFC, ECF No. 578-4; the Court's June 23, 2008 order granting relief from the stay, ECF No. 578-5; the Trustee's Fifth Report on the Operation of the Debtor's Business, ECF No. 578-6; the Court's November 19, 2010 memorandum opinion concerning summary judgment in four adversary proceedings concerning preferential transfers, ECF No. 578-7; a list of the Vehicles, ECF No. 578-8; and pages from the Texas Secretary of State's website showing that searches for security interest in the names of the Waite/Strange Parties, Waite III, and Kings Kar produced no results, ECF No. 578-9.

The Waite/Strange Parties' summary judgment evidence includes the affidavit of Waite, ECF No. 580-1; a copy of Waite's Motor Vehicle Sales Finance License, accompanied by an affidavit of Waite attesting to the validity of the license, ECF No. 580-2; the affidavit of Marvin Moye, ECF No. 580-3; and the Master Purchase and Sale Agreement, ECF No. 580-4.

The parties filed responses on June 10, 2011. ECF Nos. 589 & 591.

AFC attached additional evidence to their response: the Debtors' Schedule B, ECF No. 589-2; the Court's order granting AFC's motion to compel the Trustee to turn over certificates of title, ECF No. 589-4; the Court's memorandum of law concerning title and liens on vehicles, ECF No. 589-5; the Court's orders sustaining objections to Hardy Rawls Enterprises, LLC ("HRE")'s proof of claim, ECF Nos. 589-6 & 589-7; the Court's memorandum and order regarding disallowance of King Kar's proof of claim, ECF Nos. 589-8 & 589-9; the District Court's memorandum and opinion on HRE's appeal of the Court's denial of its proof of claim, ECF No. 589-10; the Court's final judgment in Adv. No. 08-3124, granted in favor of the Trustee and against Waite and Waite III, ECF No. 589-12; the Court's final judgment in Adv. No. 08-3223, granted in favor of the Trustee and against Robert and Shirley Strange; the District Court's

memorandum and order affirming the Court's judgment against Waite and Waite III, ECF No. 589-13; and the District Court's memorandum and order affirming the Court's judgment against Robert and Shirley Strange, ECF No. 589-14.

The Waite/Strange Parties also attached additional evidence to their response: an unsigned affidavit in Robert Strange's name, ECF No. 591-4, and a page from the Texas Secretary of State's website showing all financing statements filed against JMW, ECF No. 591-5.

The parties filed proposed orders on the sales procedures on May 26, 2011. ECF Nos. 585 & 586. The Court entered an order establishing sales procedures on June 1, 2011. ECF No. 587.

The Trustee filed a motion for reconsideration of the order on June 10, 2011. ECF No. 590. The Waite/Strange Parties filed a response to the Trustee's motion on July 1, 2011. ECF. No. 594.

A hearing on the motion for reconsideration was held on September 2, 2011. The Vehicles were stored at Insurance Auto Auction ("IAA"). ECF No. 589, at 2; ECF No. 590, at 3; ECF No. 602, at 1-2. The parties agreed that the vehicles would be auctioned at IAA. The Trustee was asked to submit a proposed order on procedures for the auction within 14 days.

At the hearing, the Court also granted leave to the Waite/Strange Parties to amend their summary judgment evidence to include a properly signed affidavit for Robert Strange. However, the Waite/Strange parties did not file any amendment to the motion for summary judgment.

On September 16, 2011, AFC, the Trustee, and the DMV submitted an agreed order establishing procedures for the Trustee to sell the Vehicles. ECF No. 601. Ronald Hinds,

counsel for Waite, Waite III, and Kings Kar was listed on the agreed order, but he did not sign the order. The Court signed and entered the order on September 26, 2011. ECF No. 602.

The order provides that AFC shall turn over possession of a 2005 Dodge Caravan (VIN 1D4GP24R45B121062) ("Dodge Caravan") to Waite, Waite III, and Kings Kar. ECF No. 602, at 1. Waite, Waite III, and Kings Kar were to be allowed to inspect the remaining 16 Vehicles at IAA. ECF No. 602, at 2. Waite, Waite III, and Kings Kar were required to turn over the original certificates of title in their possession for the remaining 16 Vehicles. ECF No. 602, at 2. The DMV was to issue duplicates certificates of title for the remaining 16 Vehicles.

The remaining 16 Vehicles were then to be sold through IAA. ECF No. 602, at 2. IAA would be paid no more than $150.00 for each vehicle. ECF No. 602, at 2. Following the sale, the Trustee "shall hold the proceeds from [the sale of the Vehicles] in trust until this Court enters an order directing the Trustee to distribute the proceeds." ECF No. 602, at 2.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

The Court grants summary judgment, in part, in favor of AFC. The summary judgment evidence establishes that AFC has a security interest in any Vehicles and RICs that are property of the estate, and that the Waite/Strange Parties do not have a security interest in any Vehicles or RICs that are property of the estate. However, there is a genuine dispute of material fact as to whether any of the Vehicles are actually property of the estate. The Court denies summary judgment to the Waite/Strange Parties.

AFC argues that the Court should grant the Motion for two reasons. First, the Court previously granted relief from stay as to sixteen of the seventeen vehicles included in the Motion. Second, AFC has a perfected security interest in the JMW's chattel paper, including JMW's RICs. AFC asserts that the Court has already ruled that the Waite/Strange Parties do not own the

RICs, that they did not document or perfect any security interest, and that they do not have a security interest. ECF No. 578, at 1.

The Waite/Strange Parties argue that AFC does not provide competent evidence to establish that the vehicles are inventory of the estate, that AFC has a legitimate lien on the estate's inventory, or that the Dodge Caravan was ever associated with the Debtors. ECF No. 580, at 1. The Waite/Strange Parties assert that their summary judgment evidence affirmatively shows that the vehicles were not part of the estate. ECF No. 580, at 4-5.

AFC provides summary judgment evidence that it has a perfected security interest in any Vehicles that were inventory of JMW and any RICs. AFC attaches the promissory note and security agreement and a UCC-1 filed with the Texas Secretary of State. ECF Nos. 578-1; 578-4. AFC also provides evidence that none of the Waite/Strange Parties has a security interest filed with the Texas Secretary of State. ECF No. 578-9. AFC also attaches the Debtors' Schedule B as evidence that the Vehicles are property of the estate. ECF No. 589-2. Schedule B lists an interest in 96 vehicles, which are described more particularly on the attached Exhibit B-30. ECF No. 16-30. AFC does not attach Exhibit B-30 to its motion or response, but the Court takes judicial notice that the cars listed on Exhibit B-30 are claimed as property of the estate.

Not all of the Vehicles are listed on Exhibit B-30. The Dodge Caravan (mentioned above); the 2005 Chevy C1500 (VIN 2GCEC13T651313364); the 2002 Chevy Trailblazer (VIN 1GNDS13S322479222); 2002 Ford F150 (VIN 1FTRW07632KD78692); and the 1998 Ford F150 (VIN 1FTZX1761WKC18433) are not listed. Additionally, the Plymouth Voyager (mentioned above) is not listed, but a Dodge Caravan with the same last six digits of the VIN (610721) is listed. As to the Vehicles that are not listed on Exhibit B-30, AFC fails to establish

as an initial matter that they are property of the estate. As set forth in more detail below, even the listed vehicles were not necessarily estate property. A genuine issue of material fact exists.

Although AFC refers to approximately 36 RICs in its motion for summary judgment, AFC does not identify the RICs or provide evidence that they are property of the estate. Accordingly, there is a genuine dispute of material fact as to whether AFC has a lien on any RICs.

The Waite/Strange Parties argue that AFC's evidence—the page from the Texas Secretary of State's website—shows that AFC's lien lapsed from August 9, 2005 to January 8, 2007. ECF No. 591, at 2 (citing ECF No. 549-2). This argument does not demonstrate that AFC has not had a perfected security interest in the Vehicles since January 8, 2007. Additionally, the Waite/Strange Parties argue that the Vehicles are not property of the estate. ECF No. 591, at 2. To refute AFC's evidence that the vehicles listed on Exhibit B-30 are property of the estate, the Waite/Strange Parties provide this statement in Moye's affidavit:

> The vehicles at issue should never have been included in a list of JMW inventory. During the confusion after the involuntary filing, Mr. Sonny Adams, employee of the Trustee and former employee of JMW, compiled the inventory list and everyone, including me, simply accepted it as correct because of his former employment with JMW. I later learned that he had simply listed every vehicle on the premises without regard to true ownership. This was incorrect and included vehicles it should not have included. Among those incorrectly listed were the Waite/Strange vehicles at issue in this matter which are sought by AFC.

ECF No. 580-3, at 1. Moye's statements establish a genuine dispute of material fact as to whether any of the Vehicles—including those listed on Exhibit B-30—are property of the estate.

Although there is a genuine dispute of material fact as to whether the Vehicles and RICs are property of the estate, there is no genuine dispute that if the Vehicles and RICs are property

of the estate, (i) AFC has a perfected first-priority lien on the Vehicles and RICs, and (ii) the Waite/Strange Parties do not have any interest in the Vehicles and RICs.

Issue preclusion bars relitigation of issues that have already been litigated in this case. "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). Generally, disposition of a case on summary judgment grounds meets the "actually litigated" requirement of the issue preclusion test. *Gen. Elec. Med. Sys. Europe v. Prometheus Health*, 394 F. App'x 280, 284 (6th Cir. 2010). Issue preclusion applies only to those issues that were essential to the judgment. Several of the issues the Waite/Strange Parties seek to relitigate were essential to prior rulings. This Court is therefore bound by the following earlier factual finding that Waite/Strange Parties do not own or have a security interest in any of JMW's retail installment contracts.

The Court also follows the law of the case doctrine. "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).

The Waite/Strange Parties assert that they own the Vehicles through their purchase of the RICs. *See* ECF No. 580-1 (affidavit of Waite, stating, "I purchased and fully paid for the contracts/titles/vehicles associated with [certain vehicles] . . . In making our purchases of RICs, we entered in a Master Purchase and Sale Agreement with JMW."). The issue of whether the Waite/Strange Parties owned the RICs by virtue of the Master Agreements has already been litigated. This Court found that the Master Agreements did not transfer the RICs to the

Waite/Strange Parties. This issue was essential to the Court's ruling in the Waite/Strange Adversaries—if the Waite/Strange Parties had owned the RICs, the remittance of the proceeds from the sale of the RICs would not have been a preferential transfer. The Court's previous finding that the Waite/Strange Parties did not own the RICs therefore bars relitigation of their assertion that they own the Vehicles because they own the RICs.

Based on the summary judgment evidence, the Court additionally concludes that the Master Agreements also did not grant any security interest in the Vehicles to the Waite/Strange Parties.

Furthermore, even if the master agreements had purported to grant the Waite/Strange Parties a lien on the Vehicles, that lien was not perfected. The Texas Certificate of Title Act provides only two methods of perfecting a lien on a vehicle: notation on a certificate of title or through a UCC-1 financing statement. *Hardy Rawls Enters. LLC v. Cage (In re Moye)*, 2010 WL 3259386, at *12 (S.D. Tex. Aug. 17, 2010) ("The most generous reading of the UCC and Certificate of Title Act permits a person to perfect a secured interest in a motor vehicle in Texas either by noting the security interest on the certificate of title or by filing a financing statement. Neither the UCC nor the Texas Certificate of Title Act contemplate mere possession of an unmarked certificate of title as adequate to perfect a security interest in that vehicle."), *aff'd by Hardy Rawls Enters. LLC v. Cage (In re Moye)*, 2011 WL 3585955 (5th Cir. Aug. 16, 2011).

The statute says:

> (a) Except as provided by Subsection (b), a person may perfect a security interest in a motor vehicle that is the subject of a first or subsequent sale only by recording his security interest on the certificate of title as provided by this chapter.
> (b) A person may perfect a security interest in a motor vehicle held as inventory by a person in the business of selling motor vehicles only by complying with Chapter 9, business & Commerce Code.

Tex. Trans. Code § 501.111. The summary judgment evidence indicates that the Waite/Strange Parties did not perfect any lien through notation on a certificate or title or through a UCC-1 financing statement.

The Waite/Strange Parties do not provide evidence that they had any security interest in any Vehicles that were property of the estate, much less a perfected lien with priority over AFC's lien. The Waite/Strange Parties provide Waite's affidavit, which states, "These are my vehicles which were repossessed on the contracts I paid for and they belong to me. I have the titles for them." ECF No. 580-1, at 1. Possession of the titles of vehicles does not perfect a lien, as the District Court held. *Moye*, 2010 WL 3259386, at *12.

Marvin Moye's affidavit states, "The vehicles at issue were purchased by Mr. Waite and Ms. Strange in that they purchased the original contracts for which the vehicles were security and then when the retail customers defaulted on their payments, the vehicles were repossessed and became the property of Mr. Waite and Ms. Strange." ECF No. 580-3, at 1.[2] He also states, "The titles stayed in the customers name with JMW as lienholder and then the contracts and titles were sold to Mr. Waite and Ms. Strange. The names, whether owner or lienholder, do not change just because the contract and title are sold to a third party such as Mr. Waite." ECF No. 580-3, at 1. Because the Court has already ruled that the Waite/Strange Parties did not at any time own the RICs, Moye's statements do not provide evidence that the Waite/Strange Parties had a lien on the Vehicles.

The parties already agreed in the order establishing procedures for the sale of the Vehicles that Waite, Waite III, and Kings Kar would be given possession of the Dodge Caravan.

---

[2] The Court does not consider Robert Strange's affidavit, ECF No. 591-5, as summary judgment evidence because the affidavit is not signed.

17 / 18

ECF No. 602, at 1.  There remains a genuine dispute of material fact as to whether the remaining Vehicles are property of the estate.

## Conclusion

The Court grants summary judgment, in part, in favor of AFC and denies summary judgment to the Waite/Strange Parties.  The Trustee, pursuant to the order establishing procedures for the sale of the Vehicles, ECF No. 602, shall hold the proceeds of the sale pending either a determination that the Vehicles are property of the estate or a determination that the Waite/Strange Parties do not have standing to challenge AFC's claim to the Vehicles.  The Waite/Strange Parties must file, within 14 days of the entry of this opinion, a pleading with attached documentary evidence or affidavits showing that they have standing to challenge AFC's claims.  The pleading must assume, for the purposes of the argument on standing, the correctness of this memorandum opinion.  The Court recognizes that the Waite/Strange Parties may determine that they have no standing and that they elect to appeal this decision.  If so, they may file a notice to that effect.  The Court will thereafter issue a final order.

SIGNED **October 7, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE